IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | | |
|---|---|---|
| Thomas L. Hicks, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | **1:20cv552 (AJT/JFA)** |
| | ) | |
| Ms. T. Doyle, *et al.*, | ) | |
|     Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiff, a Virginia inmate, submitted this *pro se* action to redress alleged violations of his constitutional rights. [Dkt. No. 10]. This matter is before the Court on: (i) Defendant Dr. Alvin Harris's ("Dr. Harris") Motion for Summary Judgment, [Dkt. No. 63]; (ii) Dr. Harris's Motion to Strike, [Dkt. No. 86]; and (iii) Plaintiff's Motions for Summary Judgment, [Dkt. No. 85 at 6] and [Dkt. No. 88 at 2]. For the reasons explained below, Dr. Harris's Motion to Strike will be denied; Dr. Harris's Motion for Summary Judgment will be granted; and Plaintiff's Motions for Summary Judgment will be denied.

### I.    Relevant Background and Procedural History

By Order entered on December 22, 2021, the Court granted Defendant T. Doyle's Motion to Dismiss, and also dismissed Defendant Dr. Fontaine from this action pursuant to Federal Rule of Civil Procedure 4(m). [Dkt. No. 54 at 1, 2 n.2]. The Court also directed Dr. Harris to file a dispositive motion within thirty days. [*Id.* at 4]. On January 14, 2022, in light of new counsel appearing on behalf of Dr. Harris, the Court granted Dr. Harris's Motion for Extension of Time and directed that he file his dispositive motion by March 22, 2022. [Dkt. No. 59 at 1].

Dr. Harris filed his Motion for Summary Judgment on March 15, 2022. Along with his summary judgment motion, Dr. Harris filed a proper notice pursuant to *Roseboro v. Garrison*, 528

F.2d 309 (4th Cir. 1975), advising Plaintiff of his right to respond to the summary judgment motion within twenty-one days. [Dkt. No. 65]. Plaintiff filed a Motion for Extension of Time to respond to the summary judgment motion, [Dkt. No. 66], which the Court granted by Order entered on April 1, 2022. [Dkt. No. 67].

By Order entered on May 11, 2022, the Court, *inter alia*, granted Plaintiff a second extension of time to respond to Dr. Harris's summary judgment motion. [Dkt. No. 82]. The following day, May 12, 2022, the Court received a filing from Plaintiff captioned "Brief in Support of Plaintiff's Motion for Summary Judgment," which the Court construes as Plaintiff's Response in Opposition to Dr. Harris's summary judgment motion.[1] [Dkt. No. 83]. Dr. Harris timely filed a Reply. [Dkt. No. 84]. Plaintiff then filed an Addendum to his Response in Opposition, [Dkt. No. 85], which Dr. Harris has moved to strike, [Dkt. No. 86]. Plaintiff timely filed a Response to Dr. Harris's Motion to Strike, [Dkt. No. 88], and Dr. Harris timely filed a Reply, [Dkt. No. 89].

The Court has reviewed and considered the operative Second Amended Complaint, as well as all of the parties' motions, responses, and replies, including all of the attached declarations and exhibits. All motions are now ripe for adjudication.

## II.   <u>Overview of the Parties</u>

Plaintiff is an inmate who is incarcerated at Deerfield Correctional Center ("DCC") in Capron, Virginia. [Dkt. No. 10 at 5]. Dr. Harris is a physician who has worked at DCC and "other correctional facilities in southeast Virginia, on and off, since 1983." Harris Decl. ¶ 3, [Dkt.

---

[1] Upon review of Plaintiff's Response in Opposition, it is not clear to the Court whether Plaintiff intends in this filing to move for summary judgment on his own behalf, or whether he only intends to oppose Dr. Harris's summary judgment motion. [*See* Dkt. No. 83 at 1–6]. Although Plaintiff's Response is captioned "Brief in Support of Plaintiff's Motion for Summary Judgment," Plaintiff does not request summary judgment therein. [*See id.*] In addition, it appears that the focus of Plaintiff's Response is to dispute the "Listing of Undisputed Facts" that is set forth in Dr. Harris's summary judgment motion. [*See id.* at 3–6]; [Dkt. No. 64 at 3]. Plaintiff does, however, request summary judgment in his Addendum and in his Response to Dr. Harris's Motion to Strike. [*See* Dkt. Nos. 85 at 6; 88 at 2]. The Court will address those motions below.

No. 64-1]. Dr. Harris has served as one of two Medical Directors at DCC since 2017, and is currently one of two physicians working at DCC. *Id.* ¶¶ 3–4. Dr. Harris has seen and treated Plaintiff on numerous occasions. *See id.* ¶ 10.

### III.   Factual Background

#### A.   Plaintiff's Allegations[2]

Plaintiff claims that he is a "chronic diabetic with neuropathy in [his] feet and hands, causing pain and mental anguish from nerve damage." [Dkt. No. 10 at 4]. Plaintiff states that he was in a "Pain Management Treatment Program" at DCC "from 2013 [to] 9-27-19 when all [Plaintiff's] pain medication was discontinued, without explanation or a[n] alternative treatment," which left Plaintiff "in pain and suffering 24/7 from diabetic neuropathy."[3] [*Id.* at 7]. Plaintiff claims that his removal from the Treatment Program was the result of "bias treatment." [*Id.* at 40]. Plaintiff further alleges that, on various dates between August 31, 2019, and March 20, 2020, Dr. Harris denied Plaintiff pain treatment and pain medication and offered Plaintiff "no alternative plan for treatment." [*Id.* at 7, 9–12].

Specifically, Plaintiff states that he saw Dr. Harris on August 31, 2019, "about renewing [Plaintiff's] pain medication (Gabapentin)[,] which [Plaintiff] had taken for years." [*Id.* at 9]. Plaintiff claims that Dr. Harris reduced Plaintiff's Gabapentin "from 800mg [three] times per day, to [800mg] [two] times per day" and that Dr Harris refused to replace the "800mg of Gabapentin

---

[2] Plaintiff's Second Amended Complaint is not verified or sworn to under penalty of perjury. [Dkt. No. 10 at 1–18, 37–43]. Thus, Plaintiff's Complaint is not admissible evidence and will not be considered in the Court's summary judgment analysis. *See McClellan v. Lewis*, No. 3:08cv260, 2009 WL 2434141, at *2 (E.D. Va. Aug. 6, 2009) (explaining that an "unsworn complaint . . . is not competent summary judgment evidence"); *see also infra* note 4. However, the Court summarizes the relevant allegations of the Second Amended Complaint herein to provide additional background of the basis for Plaintiff's claims. The Court also corrects the spelling, capitalization, and grammatical errors in the references to the Second Amended Complaint.
[3] Diabetic Neuropathy is a type of nerve damage that causes pain and tingling in the extremities. Harris Decl. ¶ 19 [Dkt. No. 64-1].

that he had taken away" with an alternative medication. [*Id.*].

Plaintiff was prescribed Cymbalta by a different doctor on September 27, 2019. Plaintiff saw Dr. Harris again on October 12, 2019, "for the treatment of [Plaintiff's] pain and suffering," and "for an alternative medication," but "Dr. Harris refused [Plaintiff] treatment." [*Id.*]. Plaintiff claims that he saw Dr. Harris on numerous occasions over the next several months with complaints of pain in his feet and hands and of side effects from the Cymbalta, but that Dr. Harris "refused to give [Plaintiff] medication for his pain and suffering." [*Id.* at 10–11]. In total, Plaintiff alleges that he saw Dr. Harris on nine occasions for complaints relating to Plaintiff's "chronic diabetic neuropathy disease," and that Plaintiff "ask[ed] and plead[ed] with Dr. Harris to treat [his] pain and suffering" but that Dr. Harris "refused [him] treatment every time." [*Id.* at 11]. Further, Plaintiff appears to claim that Dr. Harris failed to properly treat Plaintiff's diabetes. [*See id.* at 37–38] (Plaintiff alleging that his blood sugar readings varied widely and that he was not provided with a proper diet).

Plaintiff alleges that Dr. Harris's failure to provide Plaintiff with proper medical treatment and refusal to provide Plaintiff with pain medication violated Plaintiff's Eighth Amendment rights, as well as Plaintiff's rights under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"). [*Id.* at 6]. Plaintiff is seeking $100,000.00 in damages and injunctive relief. [*Id.* at 5].

**B.     Evidence Regarding the Use of Gabapentin at DCC**

Gabapentin, which is also known by the brand name Neurontin, "is an anticonvulsant used primarily to treat seizure disorders" and "is also used to treat pain resulting from shingles." Harris Decl. ¶ 25, [Dkt. No. 64-1]. In Dr. Harris's experience, Gabapentin "is not especially effective in treating diabetic neuropathy;" however, DCC inmates were often prescribed Gabapentin by outside neurologists to treat "chronic or episodic pain." *Id.* Gabapentin is "not medically necessary

to treat diabetic neuropathy or underlying diabetes." *Id.* ¶ 26. Although some patients experience subjective relief from taking Gabapentin, many antidepressant medications are equally or more effective at providing relief from diabetic nerve pain than Gabapentin. *Id.* In addition, "there is no evidence that a patient's condition will necessarily worsen if he stops taking Gabapentin or switches to another medication." *Id.*

"Though not an opioid, Gabapentin can be addictive and has the potential for abuse" and "is widely known to be abused in prisons." *Id.* ¶ 28. At DCC specifically, Gabapentin "is often hoarded, taken recreationally, and used as a form of currency by the inmates." *Id.* "[S]ince approximately 2018," Dr. Harris has "received one or more directives from the Virginia Board of Medicine and/or the [Virginia Department of Corrections] highlighting the risk of abuse associated with Gabapentin and indicating that the drug should only be used as a last resort for treating pain in most cases." *Id.* ¶ 30.

"Beginning in 2018-2019," Dr. Harris and other DCC medical staff "made a concerted effort" to wean inmates off Gabapentin. *Id.* ¶ 37. This effort was "based on the growing awareness of Gabapentin's potential for abuse" and was directed at those inmates who, like Plaintiff, had been prescribed Gabapentin for "generalized pain." *Id.* Inmates who were prescribed Gabapentin to treat "seizure disorders or shingles were permitted to continue taking [the drug]." *Id.*

### C.  Evidence Regarding Plaintiff's Medical Treatment

#### 1.  Plaintiff's Medical Condition Generally

Plaintiff is over seventy years of age and "suffers from type two diabetes with insulin dependence as well as moderate hypertension and a few other conditions common among the elderly." *Id.* ¶ 11. During Plaintiff's time at DCC, Dr. Harris and other doctors "regularly prescribed and provided [Plaintiff] with insulin and Metformin to directly treat his diabetes," and also advised Plaintiff "to restrict his diet in order to help maintain normal blood sugar levels." *Id.*

¶ 13. To Dr. Harris's knowledge, Plaintiff does not suffer from any severe complications resulting from his diabetes. *Id.* ¶ 16. Plaintiff does have moderate hypertension and has had cataracts, but Dr. Harris has seen no indication that these conditions were caused primarily by Plaintiff's diabetes. *Id.* In addition to diabetes, Plaintiff was previously treated for Hepatitis C and reported suffering an aneurism in the past. *Id.* ¶¶ 17–18.

### 2.    Plaintiff's Medical Treatment in 2019–2020

Dr. Harris treated Plaintiff on several occasions in 2019–2020. *Id.* ¶ 38. During this time period, Dr. Harris "prescribed medications and other treatments for [Plaintiff]" and "referred [Plaintiff] to several specialists for treatment of [Plaintiff's] diabetes, claimed diabetic nerve pain, and other conditions." *Id.* "[I]n accordance with DCC's goal of limiting the use of [Gabapentin]," Dr. Harris and other medical providers "tapered and ultimately terminated [Plaintiff's] prescription for Gabapentin." *Id.* ¶ 39. Dr. Harris offered Plaintiff several other medications as a "safer and more effective alternative[] to Gabapentin;" however, Plaintiff "consistently refused to take anything but Gabapentin, and on one or more occasions, he threatened to sue anyone who would not give him Gabapentin." *Id.* ¶ 41. Plaintiff's medical records and history do not support Plaintiff's claim that Gabapentin is the only medication that will work for him, but to Dr. Harris's knowledge, other than Cymbalta, Plaintiff refused to try "any alternative medication to Gabapentin during his time at DCC." *Id.* ¶ 42.

Although Plaintiff complained of pain in his hands and feet on some occasions, Plaintiff "never appeared to be in pain" and "was always calm and alert, and his facial expressions, gestures, and language did not indicate that he was experiencing significant discomfort." *Id.* ¶ 43. Dr. Harris felt that Plaintiff's circumstances did not justify providing Gabapentin to Plaintiff as a last resort. *Id.* ¶ 44.

The specifics of Plaintiff's various appointments during late 2019 and early 2020 are as follows: On August 31, 2019, Dr. Harris and other DCC medical providers began to taper Plaintiff's dose of Gabapentin in accordance with DCC's "goal of weaning Plaintiff off of Gabapentin." [Dkt. No. 64 at 11] (citing Harris Decl. ¶ 47). Plaintiff's dose of Gabapentin was reduced from 800mg, three times per day, to 800mg, twice per day. [*Id.*]. On September 17, 2019, during a visit with Dr. Harris, Plaintiff complained that the reduced dosage of Gabapentin was not helping his pain. *See* Harris Decl. ¶ 49. In response to Plaintiff's complaint, Dr. Harris offered Plaintiff "a number of alternative medications," all of which Plaintiff refused. *Id.* Plaintiff claimed that he could not take any of the alternative medications that Dr. Harris offered but did not specify any reason other than that these medications would not help his pain. *Id.*

On September 26, 2019, Plaintiff saw Dr. Fontaine, and Plaintiff again refused any alternative medication to treat his nerve pain. *Id.* ¶ 51. Plaintiff saw Dr. Yancey on September 27, 2019, and Dr. Yancey gave Plaintiff a prescription for Cymbalta as an alternative to Gabapentin. *Id.* On September 30, 2019, Plaintiff's dosage of Gabapentin was reduced again to 800mg, one time per day. *Id.* ¶ 52.

Plaintiff saw Dr. Harris on October 12, 2019, during which time Plaintiff "reported that he had been taking all of his prescribed medications, but he complained of feeling sick to his stomach, having blurred vision, passing blood, and experiencing 'static on the brain." *Id.* ¶ 53. Plaintiff attributed his symptoms to side effects of the Cymbalta. *Id.* Dr. Harris conducted a full examination of Plaintiff, and the results were normal. *Id.* Dr. Harris "discontinued Plaintiff's prescription for Cymbalta and again offered Plaintiff alternative pain medications, which [Plaintiff] again refused." *Id.* Dr. Harris also "ordered a complete blood count (CBC), a stool sample, and Maalox," and referred Plaintiff to a psychiatrist as Dr. Harris "believed a psychiatrist could be helpful in further assessing and treating [Plaintiff's] symptoms." *Id.*

7

When Dr. Harris saw Plaintiff again on October 15, 2019, Plaintiff stated he was "still experiencing 'static' in his head, hands, and feet and that the 'antidepressant' he had been prescribed was ineffective." *Id.* ¶ 54. Plaintiff saw a DCC nurse on October 21, 2019, for complaints of "ongoing pain in his feet" but again, Plaintiff "rejected all medications offered for pain." *Id.* ¶ 55.

On October 24, 2019, Plaintiff saw a podiatrist, via a referral from Dr. Harris, for a foot exam and treatment of an ingrown toenail. *Id.* ¶ 57. The podiatrist's examination notes indicate that Plaintiff was not experiencing foot pain due to neuropathy. *Id.* On October 28, 2019, Dr. Harris again referred Plaintiff to an outside psychiatrist for evaluation. *Id.* ¶ 58. Dr. Harris saw Plaintiff again on November 12, 2019, and during that visit, "Plaintiff complained of ongoing pain 'all over' and ringing in his ear." *Id.* ¶ 59. Plaintiff again asserted, without explanation, "that he was unable to take Cymbalta, Amitriptyline, or other anti-depressants" for his pain. *Id.* Dr. Harris referred Plaintiff to a neurologist for further evaluation. *Id.*

Plaintiff saw Dr. Fontaine on December 12, 2019, who suggested referring Plaintiff to an outside pain clinic and again attempted to refer Plaintiff to a neurologist, both of which Plaintiff refused. *Id.* ¶ 60; *see also* Med. Rec., [Dkt. No. 64-2 at 19]. Plaintiff claimed that "he had been to a clinic on the street and believed seeing a pain specialist would be pointless." Harris Decl. ¶ 60; *see also* Med. Rec., [Dkt. No. 64-2 at 19].

Dr. Harris next saw Plaintiff on December 22, 2019, for a general assessment of Plaintiff's diabetes management. *Id.* ¶ 61. At that time, Dr. Harris "ruled out diabetic retinopathy, noted a moderate cataract, and ordered continued daily monitoring of Plaintiff's blood sugar." *Id.* Dr. Harris does not recall any complaints of nerve pain at this visit, nor do his notes reflect any such complaints. *See id.* Dr. Harris saw Plaintiff again on January 10, 2020, in response to Plaintiff's complaints of ongoing nerve pain. *Id.* ¶ 62. Dr. Harris again attempted to prescribe Plaintiff

8

alternative medications, however, Plaintiff refused all of them. *Id.* During this time period, Plaintiff also had a prescription for the muscle relaxer and pain reliever Flexeril, which Plaintiff's medical records indicate that he "repeatedly and consistently refused" to take. *Id.* ¶ 63; *see also* Medication Admin. Notes, [Dkt. No. 64-2 at 25–42] (showing that Plaintiff refused this medication on each of the dozens of occasions staff attempted to administer this drug during the time period from December 23, 2019, through March 19, 2020).

In February, 2020, Dr. Harris referred Plaintiff for additional podiatry treatment. Harris Decl. ¶ 65. In early March, 2020, Dr. Harris referred Plaintiff to a cardiologist for a catheterization procedure in response to Plaintiff's complaints of chest pain. *Id.* Dr. Harris followed up with Plaintiff on March 20, 2020, during which time Dr. Harris discussed the results of the catheterization and reviewed Plaintiff's blood pressure and allergy medications. *Id.* Dr. Harris does not recall Plaintiff complaining of any pain associated with his diabetic neuropathy during any of his visits with Plaintiff in February or March of 2020. *Id.* ¶ 64. Likewise, Dr. Harris does not recall any complaints from Plaintiff regarding medication, or any requests from Plaintiff for additional pain medication during this time period. *Id.*

## IV.   Dr. Harris's Motion to Strike

On June 29, 2022, Plaintiff filed an Addendum to his response to Dr. Harris's summary judgment motion. [Dkt. No. 85]. Plaintiff included an attachment to his Addendum labeled "Attachment 1," wherein Plaintiff lists numerous additional dates on which Plaintiff alleges that Dr. Harris refused Plaintiff pain medication—dates that were not included in the Second Amended Complaint. [*Id.* at 7]. Dr. Harris moves, pursuant to Federal Rule of Civil Procedure 12(f), that the Court "strike from the record all portions of the Attachment 1 to Plaintiff's Addendum [that] rais[e] allegations or referenc[e] events not included in Plaintiff's Second Amended Complaint." [Dkt. No. 86 at 1]; [*see* Dkt. No. 85 at 7]. Dr. Harris argues that "Plaintiff may not raise new factual

allegations, not included in his complaint, in a supporting brief." [Dkt. No. 87 at 2].

Rule 12(f) states in pertinent part, "[t]he court may strike from a *pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (emphasis added). By its own terms, Rule 12(f) applies only to pleadings. Plaintiff's Addendum and attachment are not "pleadings" as defined by the Rules. *See* Fed R. Civ. P. 7(a) (listing the seven types of pleadings permitted under the Rules). "The filing of a motion to strike, therefore, is not a proper way to challenge" Plaintiff's Addendum. *See Int'l Longshoremen's Ass'n, Loc. 1624 v. Va. Int'l Terminals, Inc.*, 904 F. Supp. 500, 504 (E.D. Va. 1995); *Atl. Diving Supply, Inc., v. Basnight*, No. 2:22cv298, 2022 WL 18635840, at *2 (E.D. Va. Aug. 25, 2022) (explaining that "Rule 12(f) does not contemplate or provide for applicability beyond pleadings"). For these reasons, Dr. Harris's Motion to Strike will be denied.

That said, however, the Court agrees with Dr. Harris's argument that Plaintiff may not raise new factual allegations in a supporting brief that were not included in the operative complaint. [*See* Dkt. No. 87 at 2]. Plaintiff is not permitted to expand the scope of his claims via a response in opposition to a summary judgment motion. *See Emilien v. Weeks*, No. CV 0:21-2330, 2022 WL 18635150, at *4 (D.S.C. Dec. 6, 2022) (holding that plaintiff could not properly raise in his response to a summary judgment motion, "allegations of additional incidents that did not occur within the[] time periods" alleged in his complaint); *Sarno v. Wilson*, No. 1:17cv953, 2018 WL 3638079, at *3 (E.D. Va. July 27, 2018) ("It is well accepted that a plaintiff, even one proceeding *pro se*, cannot amend his complaint by asserting new claims in an opposition brief to a motion for summary judgment."), *aff'd*, 755 F. App'x 321 (4th Cir. 2019). Accordingly, the Court will not consider any new allegations raised by Plaintiff in response to Dr. Harris's summary judgment motion.

## V.   <u>Summary Judgment Standard</u>

Summary judgment is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine dispute "as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see* Fed. R. Civ. P. 56(a); *Seabulk Offshore, Ltd. v. Am. Home Assur. Co.*, 377 F.3d 408, 418 (4th Cir. 2004). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party . . . [and] [a] fact is material if it might affect the outcome of the suit under the governing law." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568 (4th Cir. 2015) (citations omitted). The moving party has the initial burden to show the absence of an essential element of the nonmoving party's case and to demonstrate that the moving party is entitled to judgment as a matter of law. *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 185 (4th Cir. 2004); *McLean v. Patten Cmtys., Inc.*, 332 F.3d 714, 718 (4th Cir. 2003); *see Celotex*, 477 U.S. at 322–25.

When the moving party has met its burden to show that the evidence is insufficient to support the nonmoving party's case, the burden then shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Honor*, 383 F.3d at 185; *McLean*, 332 F.3d at 718–19. Such facts must be presented in the form of exhibits and sworn affidavits. *Celotex*, 477 U.S. at 324; *see M&M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc.*, 981 F.2d 160, 163 (4th Cir. 1993). To successfully defeat a motion for summary judgment, the nonmoving party must rely on more than conclusory allegations, "mere speculation," the "building of one inference upon another," the "mere existence of a scintilla of evidence," or the appearance of "some metaphysical doubt" concerning a material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002); *Tao of*

11

*Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 330 F. Supp. 2d 668, 671 (E.D. Va. 2004). Rather, there must be sufficient evidence that would enable a reasonable factfinder to return a verdict for the nonmoving party. *See Anderson*, 477 U.S. at 252.

Although the Court is not "to weigh the evidence and determine the truth of the matter" at the summary judgment phase, the Court is required to "determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson*, 477 U.S. at 249); *see Jacobs*, 780 F.3d at 568–69. In determining whether there is a genuine issue for trial, "[t]he relevant inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Stewart v. MTR Gaming Grp., Inc.*, 581 F. App'x 245, 247 (4th Cir. 2014) (quoting *Anderson*, 477 U.S. at 251–52).

## VI.   <u>Analysis[4]</u>

Plaintiff claims that Dr. Harris's failure to provide Plaintiff adequate medical treatment violated Plaintiff's Eighth Amendment rights as well as his rights under the ADA and RA. [Dkt. No. 10 at 6]. Dr. Harris moves for summary judgment on the grounds that Plaintiff's claims lack merit. [*See* Dkt. No. 64 at 18–26]. Plaintiff has also moved for summary judgment. [*See* Dkt. Nos. 85 at 6; 88 at 2]. The Court will address each of Plaintiff's claims in turn and will then address

---

[4] As stated above, Plaintiff's Second Amended Complaint is not verified or sworn to under penalty of perjury. *See supra* note 2. Likewise, Plaintiff's Response in Opposition, and Addendum are not verified or sworn to under penalty of perjury. [*See* Dkt. Nos. 83, 85]. The Court also notes that although all of these documents bear Plaintiff's signature as well as a notary stamp, nothing on any of the documents indicates that an oath was administered. [*See* Dkt. Nos. 10 at 5; 83 at 7; and 85 at 8]. Thus, the Court may not consider these documents as evidence in its summary judgment analysis. *See Metcalf v. GEO Grp., Inc.*, No. 3:19cv842, 2022 WL 567837, at *3 n.4 (E.D. Va. Feb. 24, 2022) (holding that plaintiff's complaint, which bore only a notary stamp, was not admissible evidence because the complaint did not "include any language to indicate that an oath was administered" by the notary, nor was the complaint sworn to under penalty of perjury); *Lewis v. Zook*, No. 1:17cv582, 2018 WL 2656501, at *4 (E.D. Va. June 4, 2018) ("[U]nsworn argument does not constitute evidence to be considered in opposition to [a] summary judgment motion." (quoting *United States v. White*, 366 F.3d 291, 300 (4th Cir. 2004))).

Plaintiff's summary judgment motions.

### A. Plaintiff's Eighth Amendment Claim

To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendant or the defendant's failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019) ("[A] prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment." (citation omitted)).

Deliberate indifference to a serious medical need requires proof that: (i) objectively, the plaintiff was suffering from a serious medical need; and (ii) subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). Nor will a showing of civil recklessness. *See Jackson v. Lightsey*, 775 F.3d 170, 178 (2014). Further, "under the high deliberate indifference standard, even subjective knowledge of [a prisoner's] medical needs is not enough; the [defendants] must have actually known that their response was inadequate to address those needs." *Iko*, 535 F.3d at 242 (citation omitted). The Court addresses each prong of the two-prong test in turn.

### 1. Serious Medical Condition

The first prong of the two-prong test, the objective component, "is satisfied by [establishing the existence of] a serious medical condition." *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). A serious medical condition is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the

13

necessity for a doctor's attention." *Iko*, 535 F.3d at 241.

Here, Dr. Harris argues that Plaintiff has failed to establish that he suffers from an objectively serious medical condition. [Dkt. No. 64 at 19–21]. Dr. Harris cites *Vines v. Gujral*, No. 2:15cv516, 2017 WL 4112402, *5 (E.D. Va. Mar. 2, 2017), in support of his argument. [*Id.* at 20]. Upon review, the Court finds that *Vines* is readily distinguishable from the instant case on this point.

In *Vines*, the court specifically found that although the plaintiff claimed to suffer from both diabetes and neuropathy, the record in that case conclusively established that plaintiff did not suffer from either of those conditions. *Vines*, 2017 WL 4112402, at *5. Furthermore, the court noted that a diagnosis of diabetes or neuropathy could satisfy the objective prong of the test. *See id.*

In the present case, Dr. Harris acknowledges that Plaintiff has diabetes, and Plaintiff's medical records appear to reflect that Plaintiff also suffers from diabetic neuropathy. *See* Harris Decl. ¶ 11; Medical Recs., [Dkt. No. 10 at 25, 27–29, 32]. Thus, for purposes of summary judgment, the Court will assume that Plaintiff suffers from a serious medical condition.

### 2.    Deliberate Indifference

A prisoner may satisfy the second prong of the applicable two-prong test, the subjective component, "by showing deliberate indifference by prison officials." *Johnson*, 145 F.3d at 167. To establish deliberate indifference, a prisoner must demonstrate that the prison official actually knew of and disregarded a substantial risk to inmate health or safety. *Farmer*, 511 U.S. at 837.

Thus, to survive a motion for summary judgment under the deliberate indifference standard, a plaintiff "must show that the official in question subjectively recognized a substantial risk of harm . . . [and] that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997)). Additionally, "[t]o

14

establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citing *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)).

When evaluating a prisoner's complaint regarding medical care, the Court is mindful that "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103–04). In this regard, the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977). Absent exceptional circumstances, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim, much less to demonstrate deliberate indifference. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)).

In the present case, Plaintiff claims that Dr. Harris refused to provide Plaintiff with his prescribed pain medication, Gabapentin, and that Dr. Harris refused to provide Plaintiff any alternative medication or treatment to alleviate Plaintiff's pain. [*See* Dkt. No. 10 at 7–12]. Plaintiff further alleges that his blood sugar reading fluctuated widely and that he did not have access to a proper diet to help regulate his blood sugar. [*See id.* at 37–38]. Dr. Harris argues in response that Plaintiff has failed to establish facts that show that "Dr. Harris was aware that Plaintiff faced a substantial risk of harm without having Gabapentin, and that Dr. Harris knew his actions were insufficient in light of that risk." [Dkt. No. 64 at 24]. With respect to Plaintiff's claims regarding his diabetes, Dr. Harris asserts that Plaintiff fails to establish that "[Dr.] Harris in any way failed to regulate Plaintiff's blood sugar or deprived Plaintiff of a suitable diabetic diet." [*Id.* at 25].

15

With regard to Plaintiff's diabetic neuropathy, the evidence before the Court, as summarized above, shows that DCC medical officials' decision to taper and ultimately discontinue Plaintiff's use of Gabapentin was based upon "an emerging policy and concerted effort among DCC staff and institutional physicians more broadly to limit the use of Gabapentin as a pain reliever in light of the drug's known potential for abuse." [Dkt. No. 64 at 23]; *see* Harris Decl. ¶ 37; *see also* Harris Decl. ¶ 30 (Dr. Harris stating that he has received directives from the "Virginia Board of Medicine and/or the [Virginia Department of Corrections] highlighting the risk of abuse associated with Gabapentin and indicating that the drug should only be used as a last resort for treating pain in most cases"). The record further shows that once this determination was made, Dr. Harris used his medical judgment to determine the types of alternative pain medications and other treatments to prescribe to Plaintiff. *See* Harris Decl. ¶¶ 38–65; Medical Recs., [Dkt. No. 64-2 at 12, 14, 15, 17–18, 20].

Specifically, the evidence establishes that Dr. Harris saw Plaintiff on numerous occasions and, contrary to Plaintiff's allegations, Dr. Harris consistently attempted to address Plaintiff's complaints of nerve pain. *See* Harris Decl. ¶¶ 38–65; Medical Recs., [Dkt. No. 64-2 at 12, 14, 15, 17–18, 20]. Plaintiff, however, repeatedly rejected Dr. Harris's (and other DCC physician's) efforts to treat Plaintiff's pain with alternative medications and treatments, including referrals to a neurologist and an outside pain management clinic.[5] Harris Decl. ¶¶ 40, 49, 51, 53, 55, 58–60, 62–63; Medical Recs., [Dkt. No. 64-2 at 11, 13, 15, 18–20]. Further, Plaintiff's insistence that he could not take any drug other than Gabapentin is not supported by any evidence that the Court can

---

[5] While Plaintiff disputes much of this evidence, he does not do so in any sworn statement that appears in the record. [*See* Dkt. Nos. 83 at 2–5; 85 at 4]. Moreover, the Court finds that the medical records that Plaintiff cites in support of his Response in Opposition and Addendum do not give rise to any genuine issue of material fact regarding whether Dr. Harris was deliberately indifferent to Plaintiff's serious medical needs, or whether Dr. Harris discriminated against Plaintiff on the basis of a disability.

find in the record and Plaintiff offers only his own medical self-assessments in support of these claims. *See* Medical Recs., [Dkt. No. 64-2 at 13, 15, 18–20]; *see also* Harris Decl. ¶ 41(stating that Plaintiff "consistently refused to take anything but Gabapentin, and . . . threatened to sue anyone who would not give him Gabapentin"). Contrary to Plaintiff's unsupported claims, Dr. Harris avers that he "is not aware of any medical reason why [Plaintiff] could not take any of the alternative medications offered." Harris Decl. ¶¶ 42, 49–50; *see also id.* ¶¶ 17–18 (Dr. Harris stating that neither Plaintiff's liver condition, nor his history of aneurism, would prevent Plaintiff from taking Tylenol, Motrin, or any of the antidepressant medications that DCC medical staff attempted to provide to Plaintiff). Dr. Harris also asserts that Plaintiff's medical "circumstances did not justify providing Plaintiff Gabapentin . . . as a last resort." *Id.* ¶ 44.

With respect to Plaintiff's diabetes, the record evidence shows that Dr. Harris treated and monitored Plaintiff's condition and that Plaintiff received insulin and Metformin on a daily basis while under Dr. Harris's care. *Id.* ¶¶ 13, 16, 54, 61, 65; Medical Recs., [Dkt. No. 64-2 at 8, 20–21]; Medication Admin. Notes, [Dkt. No. 64-2 at 25–43]. The evidence also establishes that Dr. Harris has no involvement regarding the types of meals available to Plaintiff at DCC, nor was Dr. Harris responsible for assigning Plaintiff to receive any particular meal plan. *See* Harris Decl. ¶¶ 13–14.

While Plaintiff may have been dissatisfied with his medical care and may have disagreed with the treatment that he received from Dr. Harris, such disagreements cannot sustain a deliberate indifference claim absent exceptional circumstances, and no such circumstances are present in this case. *See Scinto*, 841 F.3d at 225; *Wright*, 766 F.2d at 849. Similarly, "[w]hether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations." *Jones v. Naphcare Med. Dep't*, No. 3:19cv310, 2020 WL 5369187, at *8 (E.D. Va. Sept. 8, 2020) (quoting *Snipes v. DeTella*, 95

F.3d 586, 592 (7th Cir. 1996)). Plaintiff falls far short of demonstrating any such circumstances in the present case. Finally, Plaintiff's conclusory statements regarding his medical care and medications "do not indicate that he is competent to testify regarding medical matters." *Boyd v. Tesemma*, No. 2:14cv196, 2016 WL 9109113, at *6 (E.D. Va. Apr. 26, 2016) (recognizing that "a prisoner 'wholly lacking in medical knowledge' may not give expert medical testimony" (quoting *Pearson v. Ramos*, 237 F.3d 881, 886 (7th Cir. 2001))), *aff'd*, 675 F. App'x 334 (4th Cir. 2017). As such, Plaintiff's claims regarding treatment decisions and medication choices, unsubstantiated by material evidence in the record, do not create a genuine issue of material fact. *See Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) (observing that a nonmoving party cannot "create a genuine issue of material fact through mere speculation or the building of one inference upon another" (citation omitted)).

Thus, for these reasons, the Court finds that the record lacks sufficient evidence to allow a reasonable factfinder to conclude that Dr. Harris was deliberately indifferent to Plaintiff's serious medical needs in violation of Plaintiff's Eighth Amendment rights.

## B.    Plaintiff's ADA and RA Claims

Plaintiff alleges that Dr. Harris violated Plaintiff's rights under Title II of the ADA and Section 504 of the RA by removing Plaintiff from the "treatment program for [Plaintiff's] pain" and for refusing to provide Plaintiff with "alternative medication for [his] pain and suffering."[6] [Dkt. No. 10 at 6, 40–41]. Dr. Harris argues that "an individual defendant cannot be held liable under Title II of the ADA, or Section 504 of the RA," nor can a Plaintiff bring a § 1983 claim that is "predicated on the violation of either statute." [Dkt. No. 64 at 18].

---

[6] The Court notes that Dr. Harris avers that such a program does not exist at DCC. *See* Harris Decl. ¶ 8 (stating that "DCC does not have a specific pain management treatment program," and that "[m]edications . . . are prescribed on an individual basis" according to the inmate's particularized needs). For purposes of summary judgment, however, the Court will accept Plaintiff's claim as true.

As an initial matter, the Court agrees with Dr. Harris's argument that there is no individual liability under either statute. *Brown v. Dep't of Pub. Safety & Corr. Servs.*, 383 F. Supp. 3d 519, 552 (D. Md. 2019) ("Neither Title II of the ADA nor Section 504 of the [RA] permit individual capacity suits."). However, Plaintiff clearly may raise his ADA and RA claims against Dr. Harris in his *official* capacity. *See Fauconier v. Clarke*, 966 F.3d 265, 280 (4th Cir. 2020) (holding that the district court erred in dismissing plaintiff's claims under the ADA for damages against Virginia Department of Corrections officials in their official capacities); *Adams v. Montgomery Coll.*, 834 F. Supp. 2d 386, 396 (D. Md. 2011) (noting that Plaintiff could bring an ADA claim against state university officials in their official capacities). Plaintiff fails to indicate in his Second Amended Complaint whether he brings his claims against Defendants in their official or individual capacities. [*See* Dkt. No. 10 at 1–43]. Accordingly, in deference to Plaintiff's *pro se* status, the Court will construe Plaintiff's ADA and RA claims as having been brought against Dr. Harris in his official capacity.

In examining Plaintiff's claims, the Court first notes that where, as here, a plaintiff raises his claims under both Title II of the ADA and Section 504 of the RA, that the claims should be considered together "because the analysis is substantially the same." *Seremith v. Bd. of Cnty. Comm'rs Frederick Cnty.*, 673 F.3d 333, 336 n.1 (4th Cir. 2012). This is so because "[t]he causes of action differ only with respect to causation. Under the [RA], the plaintiff must establish he was excluded 'solely by reason of his disability,' while Title II only requires that the disability was 'a motivating cause of the exclusion.'" *Wimer v. Greene Cnty. Gen. Cir. Ct.*, No. 3:19cv21, 2019 WL 5580961, at *4 (W.D. Va. Oct. 29, 2019) (quoting *Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 750 (4th Cir. 2018)), *aff'd*, 806 F. App'x 193 (4th Cir. 2020).

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services,

programs, or activities of a public entity, or be subjected to discrimination by any such entity."

42 U.S.C. § 12132. A state prison is a "public entity" for purposes of Title II. *Metcalf v. GEO Grp., Inc.*, No. 3:19cv842, 2021 WL 2385103, at *9 (E.D. Va. June 10, 2021) (citing *United States v. Georgia*, 546 U.S. 151, 154 (2006)).

> To state a claim for relief under Title II of the ADA, Plaintiff must allege that:
>
> (1) [ ]he has a disability, (2) [ ]he is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) [ ]he was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of h[is] disability.

*Id.* (quoting *Constantine v. George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005)).

The Court has conducted a thorough review of the record and can find no evidence to support any claim that Dr. Harris acted with discriminatory intent. This is fatal to Plaintiff's claims as the Fourth Circuit Court of Appeals has routinely held that absent discriminatory intent, failure to provide medical care cannot—on its own—form the basis of an ADA claim. *See Miller v. Hinton*, 288 F. App'x 901, 903 (4th Cir. 2008) (holding that the "ADA is not 'violated by a prison's simply failing to attend to the medical needs of its disabled prisoners'" (quoting *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir.1996))); *Resper v. Corizon*, No. CV SAG-22-378, 2022 WL 3544258, at *2 (D. Md. Aug. 16, 2022) (collecting cases).

As summarized above, Plaintiff claims that Dr. Harris removed Plaintiff from his pain management program and denied Plaintiff any alternative pain medication to treat his diabetic neuropathy. Although Plaintiff claims that "this [was] bias treatment," he offers no support—and the Court can find none in the record—for this bare statement, much less any support that the alleged bias against Plaintiff was "by reason of his disability." [*See* Dkt. No. 10 at 40]. Such conclusory allegations are insufficient to create a genuine dispute of material fact. *Anderson*, 477 U.S. at 252; *Thompson*, 312 F.3d at 649; *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013).

In sum, the Court finds that on the record before it, no reasonable factfinder could conclude that Dr. Harris violated Plaintiff's rights under the ADA or RA.

### C.    Plaintiff's Summary Judgment Motions

As noted above, Plaintiff moved for summary judgment in his Addendum to his Response in Opposition and in his Response to Dr. Harris's Motion to Strike. *See supra* note 1; [Dkt. Nos. 85 at 6; 88 at 2]. While Plaintiff asserts that Dr. Harris violated his rights, he failed to sufficiently support his arguments with evidence in the record. [*See* Dkt. Nos. 85 at 5–6; 88 at 2]. As stated in the Court's analysis of Dr. Harris's summary judgment motion, nothing in Plaintiff's submissions, nor any evidence that the Court can find in the record, supports Plaintiff's allegations that Dr. Harris was deliberately indifferent to Plaintiff's serious medical needs or that Dr. Harris discriminated against Plaintiff on the basis of a disability.

Accordingly, the Court concludes that Plaintiff has failed to demonstrate entitlement to summary judgment, and Plaintiff's summary judgment motions will be denied.

### VII.    Conclusion

For the foregoing reasons, Dr. Harris's Motion to Strike will be denied; Dr. Harris's Motion for Summary Judgment will be granted; and Plaintiff's Motions for Summary Judgment will be denied. An appropriate order shall issue.

Entered this ___6___ day of _March_ 2023.

Alexandria, Virginia

_____
Anthony J. Trenga
Senior United States District Judge